**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GNANA CHINNIAH a/k/a GNANACHANDRA M.
CHINNIAH,

                              Plaintiff,

                    -v-

FEDERAL ENERGY REGULATORY
COMMISSION, JOHN SPAIN, and PRAPA
HARAN,

                              Defendants.

18 CIV. 8261 (VSB)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2689
E-mail: danielle.levine@usdoj.gov

DANIELLE J. LEVINE
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ...............................................................................................................2

I.      FACTUAL ALLEGATIONS ................................................................................2

II.     THE CLAIMS IN THE COMPLAINT ...............................................................4

LEGAL STANDARD........................................................................................................5

ARGUMENT .....................................................................................................................5

I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER
        PLAINTIFF'S WHISTLEBLOWER PROTECTION ACT CLAIM................................5

II.     THE CSRA PREEMPTS PLAINTIFF'S COMMON LAW TORT CLAIMS .................7

III.    PLAINTIFF'S CONSTITUTIONAL CLAIMS MUST BE DISMISSED......................11

        A.      Sovereign Immunity Bars Plaintiff's Constitutional Claims Against FERC.........11

        B.      Plaintiff's Section 1981 and 1983 Claims Fail Because Defendants Spain
                and Haran Were Acting Under Federal Law ........................................................11

        C.      The CSRA Precludes Plaintiff from Maintaining a *Bivens* Damages Claim.........11

CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
968 F.2d 196 (2d Cir. 1992) ........................................................................ 5

*Berry v. United States*,
93 Civ. 8652, 1995 WL 33284 (S.D.N.Y. Jan. 27, 1995) ...................... 8, 10

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
403 U.S. 388 (1971) ................................................................................ 11

*Broughton v. Courtney*,
861 F.2d 639 (11th Cir. 1988) ................................................................... 8

*Burl v. Principi*,
181 F. App'x 760 (11th Cir. 2006) ...................................................... 8, 10

*Bush v. Lucas*,
462 U.S. 367 (1983) ................................................................................ 13

*Castro v. United States*,
34 F.3d 106 (2d Cir. 1994) ...................................................................... 11

*Desmond v. Dep't of Defense*,
No. 92-2201, 1993 WL 88196 (1st Cir. Mar. 19, 1993) ............................ 9

*Doe v. FDIC*,
545 F. App'x 6 (2d Cir. 2013) .............................................................. 7, 9

*Dotson v. Griesa*,
398 F.3d 156 (2d Cir. 2005) ............................................... 11, 12, 13, 14

*FDIC v. Meyer*,
510 U.S. 471 (1994) ................................................................................ 11

*Feit v. Ward*,
886 F.2d 848 (7th Cir. 1989) ............................................................ 12, 14

*Ghaly v. U.S. Dep't of Agric.*,
228 F. Supp. 2d 283 (S.D.N.Y. 2002) ................................................... 5, 6

*Grisham v. United States*,
103 F.3d 24 (5th Cir. 1997) .................................................................... 10

*Hurwitz v. United States*,
   884 F.2d 684 (2d Cir. 1989) .................................................................................. 10

*Jarvis v. Cardillo*,
   98-CIV-5793 (RWS), 1999 WL 187205 (S.D.N.Y. Apr. 6, 1999) ....................................... 9, 12

*Kerr v. Jewell*,
   836 F.3d 1048 (9th Cir. 2016) .................................................................................. 6

*Kersey v. Widnall*,
   No. Civ. A-97-10464, 1998 WL 151232 (D. Mass. Mar. 12, 1998) .................................. 8, 10

*Lombardi v. SBA*,
   889 F.2d 959 (10th Cir. 1989) ................................................................................. 12

*Loos v. Napolitano*,
   665 F. Supp. 2d 1054 (D. Neb. 2009) ...................................................................... 8, 10

*Luckett v. Bure*,
   290 F.3d 493 (2d Cir. 2002) ...................................................................................... 5

*Lyons v. Litton Loan Servicing LP*,
   158 F. Supp. 3d 211 (S.D.N.Y. 2016) .......................................................................... 2

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ...................................................................................... 5

*Patrick v. Adjusters Int'l, Inc.*,
   16-cv-2789 (WFK), 2017 WL 6521251 (E.D.N.Y. Dec. 18, 2017) ...................................... 14

*Reichle v. Howards*,
   566 U.S. 658 (2012) ............................................................................................... 13

*Rivera v. United States*,
   924 F.2d 948 (9th Cir. 1991) .................................................................................... 10

*Robinson v. Overseas Military Sales Corp.*,
   21 F.3d 502 (2d Cir. 1994) ........................................................................................ 5

*Roth v. United States*,
   952 F.2d 611 (1st Cir. 1991) ........................................................................... 7, 8, 9, 10

*Saul v. United States*,
   928 F.2d 829 (9th Cir. 1991) ......................................................................... 7, 9, 10, 12

*Schwartz v. Int'l Fed. of Prof. & Tech. Eng'rs*,
   306 F. App'x 168 (5th Cir. 2009) ................................................................................. 8

*Schweiker v. Chilicky,*
   487 U.S. 412 (1988) ........................................................................................ 14

*Semper v. Gomez,*
   747 F.3d 229 (3d Cir. 2014) ........................................................................... 12

*Shipping Fin. Servs. Corp. v. Drakos,*
   140 F.3d 129 (2d Cir. 1998) ............................................................................. 5

*Stella v. Minetta,*
   284 F.3d 135 (D.C. Cir. 2002) ....................................................................... 6, 7

*Sykes v. Bank of Am.,*
   723 F.3d 399 (2d Cir. 2013) ........................................................................... 11

*Tiltti v. Weise,*
   155 F.3d 596 (2d Cir. 1998) ............................................................................. 7

*Ugarte v. Johnson,*
   40 F. Supp. 2d 178 (S.D.N.Y. 1999) ....................................................... 6, 7, 8, 9

*United States v. Fausto,*
   484 U.S. 439 (1988) ..................................................................................... 7, 10

*Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017) ................................................................................ 12, 13

**Statutes**

5 U.S.C. § 1214(a)(1)(A) ..................................................................................... 6

5 U.S.C. § 1214(a)(3) ........................................................................................... 6

5 U.S.C. § 1214(c)(2) ........................................................................................... 6

5 U.S.C. § 2302 ................................................................................................. 4, 7

5 U.S.C. § 2302(a)(2)(A)(iii) .............................................................................. 8

5 U.S.C. § 2302(a)(2)(C) ..................................................................................... 5

5 U.S.C. § 2302(b) ............................................................................................... 5

5 U.S.C. § 2302(b)(8) ........................................................................................... 9

5 U.S.C. § 2302(b)(9) ........................................................................................... 9

5 U.S.C. § 2302(b)(12) ...................................................................................... 7, 9

5 U.S.C. § 4303(f)(2) .......................................................................................... 9

5 U.S.C. § 7511(a)(1) .......................................................................................... 9

5 U.S.C. § 7702(a) .............................................................................................. 6

28 U.S.C. § 1346(b) .......................................................................................... 10

28 U.S.C. § 2675(a) .......................................................................................... 10

28 U.S.C. § 2680(h) .......................................................................................... 10

42 U.S.C. § 1981 .............................................................................................. 11

42 U.S.C. § 1983 .............................................................................................. 11

42 U.S.C. § 7134 ................................................................................................ 5

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..................................................... 1, 5, 15

Defendants Federal Energy Regulatory Commission ("FERC"), John Spain, and Prapa Haran ("Defendants"), by their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

*Pro se* Plaintiff Gnana Chinniah ("Plaintiff"), a former probationary employee of FERC, seeks money damages from his former employer and supervisors, alleging that they retaliated against him, and ultimately terminated him, in response his purported whistleblowing activities, in violation of the Whistleblower Protection Act of 1989 ("WPA") and his First Amendment rights. Plaintiff also brings claims for common law torts, alleging that Defendants defamed him and impermissibly invaded his privacy by spreading false accusations about Plaintiff's work performance and disseminating confidential information about Plaintiff as a means to dissuade Plaintiff from pursuing his alleged whistleblowing complaints, and also to retaliate against him for raising those concerns.

This Court lacks jurisdiction over each of Plaintiff's claims. The Civil Service Reform Act of 1978 ("CSRA") sets forth the exclusive mechanism through which federal employees can challenge prohibited personnel practices. For each of the violations Plaintiff alleges, the CSRA's mechanism for redress does not include a suit for money damages in federal district court. Courts are uniform that federal district courts lack jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance. Because Plaintiff has not pursued the required administrative remedies, as set forth in the CSRA, Plaintiff's claims under the WPA must be dismissed. The CSRA's remedial scheme also forecloses Plaintiff's state-law and constitutional challenges. As a probationary employee, Plaintiff could have brought a complaint to the Office of Special Counsel. Under no circumstances, however, is he permitted to

circumvent the CSRA's comprehensive and extensive framework for challenging prohibited personnel practices through a claim for money damages in district court.

For all of these reasons, and as set forth in greater detail below, the Complaint should be dismissed in its entirety, and judgment should be entered in favor of Defendants.

## BACKGROUND

### I.    FACTUAL ALLEGATIONS[1]

Plaintiff was hired in the competitive service by FERC on January 23, 2017, as a Civil Engineer in FERC's New York Regional Office, and was subject to a one-year probationary period.  Complaint ¶ 6; Declaration of Sidney Chapman ("Chapman Decl.") ¶ 4.  During Plaintiff's employment, he reported to defendant Haran, the Branch Chief of the New York Regional Office.  Complaint ¶ 6.  Plaintiff alleges that defendant Haran required his reports, including Plaintiff, to sign in and out on a sign-in sheet on those days that they were in the New York office.  *Id.* ¶ 9.

Plaintiff claims that, when he went to sign in on July 13, 2017, around 7:35 a.m., he noted that his colleague, Harold Kamara, had signed in at 8:30 a.m.  *Id.* ¶ 13.  Plaintiff alleges that he discussed the incident with his colleague, Richard Deubert, and confirmed that Mr. Kamara was not in the building around 7:40 a.m.  *Id.* ¶¶ 13, 16.  Plaintiff then reported Mr. Kamara's alleged conduct to defendant Haran.  *Id.* ¶ 22.  Plaintiff claims that, because defendant Haran "never showed any interest to follow up on this incident," *id.* ¶ 23, on July 27, 2017, he reported the alleged conduct to defendant Spain, the Regional Engineer, and defendant Haran's supervisor, *id.* ¶¶ 3, 24.  Plaintiff alleges that defendant Spain "downplayed" the incident, stating

---

[1] The well-pleaded factual allegations of the SAC are accepted as true for purposes of this motion only.  *See, e.g.*, *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016).

that Mr. Kamara may have come to the New York Regional Office to sign in and then left to perform dam safety inspections. *Id.* ¶ 25.  When Plaintiff did not accept this response, Plaintiff claims that defendant Spain "became visibly angry and intimated [Plaintiff] by saying that the supervision of these issues were not Plaintiff's responsibility," and threatened to terminate Plaintiff's probationary employment. *Id.* ¶ 26.

Plaintiff alleges that he told defendant Spain that he only wanted to have a meeting with defendant Haran so that Mr. Kamara's conduct could be investigated. *Id.* ¶ 27.  In response, defendant Spain asked Plaintiff whether he was available on July 31, 2017, to arrange a meeting with defendant Haran. *Id.* ¶ 28.  After Plaintiff returned to his desk, he sent an email to defendants Spain and Haran, copying Mr. Deubert, suggesting that Mr. Deubert should be included in the meeting. *Id.* ¶ 29.  Shortly after sending the email, Plaintiff alleges that defendant Spain rushed to Plaintiff's cubicle, and "whispered threats using derogatory language stating that Plaintiff was not even worth half of what Mr. Kamara was doing for FERC." *Id.* ¶ 30.  As defendant Spain returned to his office, Plaintiff began questioning him in a loud voice. *Id.* ¶ 32.  After defendant Spain closed his office door, Plaintiff showed Donna Samuels, defendant Spain's assistant, the email. *Id.* ¶ 34.  As Plaintiff was showing the email to Ms. Samuels, defendant Spain came out of his office and asked Ms. Samuels to call the Federal Protection Service to have Plaintiff removed from the premises. *Id.* ¶ 35.  In response, Plaintiff left the building voluntarily and surrendered his security access card. *Id.* ¶¶ 36-37.

As a consequence of the events on July 27, 2017, Plaintiff alleges that he did not feel fit to return to work on Monday, July 31, 2017,[2]  and therefore sent an email that morning to defendants Spain and Haran requesting sick leave and to reschedule the meeting. *Id.* ¶ 39.  Later

---

[2] Plaintiff does not allege whether he was scheduled for work on Friday, July 28, 2017.

that day, defendant Spain sent Plaintiff an email, placing him on Administrative Leave with a recommendation to Human Resources to terminate Plaintiff's probationary employment.  *Id.* ¶ 40.  Following receipt, on August 1, 2017, Plaintiff forwarded defendant Spain's email to David Capka, the Director of the Division of Dam Safety and Inspections, and defendant Spain's direct supervisor.  *Id.* ¶ 41.  Plaintiff alleges that Mr. Capka replied, stating that he forwarded the email to Human Resources.  *Id.* ¶ 42.  On August 11, 2017, Sidney Chapman, the Director of FERC's Workforce Relations Division, left Plaintiff a voicemail, informing him that Mr. Capka had directed him to investigate the incident concerning the sign-in sheets.  *Id.* ¶ 45.  Plaintiff claims that he subsequently spoke with Mr. Chapman about the alleged events, who said that he would investigate the matters.  *Id.* ¶¶ 47-50. On September 11, 2017, defendant Spain emailed Plaintiff, terminating his employment, effective September 15, 2017.  *Id.* ¶ 53.

## II.    THE CLAIMS IN THE COMPLAINT

Plaintiff asserts a myriad of statutory, common law, and constitutional claims against FERC and defendants Spain and Haran in their individual capacities.  First, Plaintiff claims that Defendants violated the Whistleblower Protection Act of 1989, 5 U.S.C. § 2302, alleging that Plaintiff's termination during his probationary period was pretext for his reporting of his concerns about the use of the sign-in sheets (Count I).  Complaint ¶ 65.  Second, Plaintiff alleges that defendants Spain and Haran committed defamation and violated Plaintiff's right to privacy by disseminating false information concerning Plaintiff's work performance and disclosing personal information to humiliate or influence Plaintiff and his family (Count II).  Complaint ¶ 67.  Third, Plaintiff alleges defendants Spain and Haran violated Plaintiff's First Amendment rights through selective enforcement of FERC's sign-in sheet procedures and retaliation for his reporting of his concerns (Count III).  Complaint ¶ 69.

**LEGAL STANDARD**

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff carries the burden of establishing that the Court has subject matter jurisdiction to adjudicate his complaint.  *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).  A claim must be dismissed when a district court lacks the statutory or constitutional authority to adjudicate it.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A plaintiff must prove that subject matter jurisdiction exists by a preponderance of the evidence. *See id.*  In resolving a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a district court may refer to evidence outside the pleadings.  *Id.*; *accord Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).  Although a court must "accept as true all material factual allegations in the complaint," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citation omitted), for purposes of assessing jurisdiction, it will not draw "argumentative inferences favorable to the party asserting jurisdiction." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).

**ARGUMENT**

**I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S WHISTLEBLOWER PROTECTION ACT CLAIM**

Plaintiff's claim brought pursuant to the WPA must be dismissed for lack of jurisdiction because Plaintiff failed to exhaust his administrative remedies before filing suit in federal court. The CSRA, as amended by the WPA, Pub. L. No. 101–12, 103 Stat. 16 (codified at 5 U.S.C. § 2302(b)), governs claims for retaliation against whistleblowing activities brought by federal employees against their federal employers.[3]  *See Ghaly v. U.S. Dep't of Agric.*, 228 F. Supp. 2d

---

[3] 42 U.S.C. § 7134 established FERC within the Department of Energy, an Executive agency under 5 U.S.C. § 2302(a)(2)(C).

283, 288 (S.D.N.Y. 2002).  The CSRA sets forth the exclusive mechanism through which federal employees can challenge prohibited retaliatory personnel practices.  *See Kerr v. Jewell*, 836 F.3d 1048, 1058 (9th Cir. 2016); *Ghaly*, 228 F. Supp. 2d at 288; *Ugarte v. Johnson*, 40 F. Supp. 2d 178, 181 (S.D.N.Y. 1999).  Such challenges must be raised first with the Office of Special Counsel ("OSC"), and then appealed, if at all, to the Merit Systems Protection Board ("MSPB"). *See* 5 U.S.C. §§ 1214(a)(1)(A), (a)(3); *Stella v. Minetta*, 284 F.3d 135, 143 (D.C. Cir. 2002). Only after exhausting these administrative remedies may employees who have been aggrieved by a final MSPB decision seek judicial review in the Federal Circuit.  5 U.S.C. § 1214(c)(2); *Stella*, 284 F.3d at 143. "Under no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance."  *Stella*, 284 F.3d at 142; *see also Kerr*, 836 F.3d at 1058.

Here, Plaintiff has failed to exhaust his administrative remedies, mandating dismissal of Plaintiff's WPA claim.  Plaintiff does not even purport to have filed a claim with OSC or an appeal to the MSPB, and FERC has no record that any such administrative claim was filed.  *See* Chapman Decl. ¶ 5.  Because Plaintiff was required to bring his WPA claim to the OSC in the first instance, Plaintiff's complaint must be dismissed for lack of jurisdiction.  Further, even if Plaintiff had exhausted his administrative remedies before the OSC and MSPB, this Court would still lack jurisdiction because "[c]hallenges to a final MSPB decision on a claim of violations of the Whistleblower Protection Act of 1989 must be raised before the Court of Appeals for the Federal Circuit, not here."  *Ghaly*, 228 F. Supp. 2d at 288-89 (citing 5 U.S.C. § 1214(c)(1); 5 U.S.C. § 7703(b)(1)).[4]  Accordingly, Plaintiff's WPA must be dismissed.

---

[4] Although a "narrow exception confers jurisdiction in a federal district court [for WPA claims mixed with] certain claims of discrimination," *Ugarte*, 40 F. Supp. 2d at 181 (citing 5 U.S.C. § 7702(a)), Plaintiff has raised no such discrimination claims here.  *See* 5 U.S.C. § 7702(a)

## II.    THE CSRA PREEMPTS PLAINTIFF'S COMMON LAW TORT CLAIMS

The CSRA sets forth a "comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988).  The CSRA "prescribes in great detail the protections and remedies applicable to [personnel actions against federal employees], including the availability of administrative and judicial review." *Id.* at 443. Through the CSRA, Congress set out procedures for challenging "prohibited personnel practices," 5 U.S.C. § 2302, which include "personnel action[s]" that violate the merit system principles.  5 U.S.C. § 2302(b)(12); *see also Saul v. United States*, 928 F.2d 829, 833 (9th Cir. 1991); *Roth v. United States*, 952 F.2d 611, 614 (1st Cir. 1991).  "The merit system principles include treating employees fairly and equitably, 'with proper regard for their privacy and constitutional rights,' as well as protecting employees against arbitrary action and personal favoritism." *Saul*, 928 F.2d at 833 (citing 5 U.S.C. §§ 2301(b)(2), 2301(b)(8)(A)).

Given the CSRA's extensive and comprehensive framework, the CSRA "provides the exclusive remedy by which [federal] employees may challenge [personnel] actions and, unless the [CSRA] either explicitly or by necessary implication sanctions judicial challenges to such actions, judicial challenge is foreclosed." *Tiltti v. Weise*, 155 F.3d 596, 600 (2d Cir. 1998); *see also Doe v. FDIC*, 545 F. App'x 6, 8 (2d Cir. 2013) (summary order).  Accordingly, "[i]t is beyond serious question that the CSRA preempts state-law challenges to prohibited personnel practices in the federal workplace." *Roth*, 952 F.2d at 614 (CSRA bars defamation claim); *Saul*, 928 F.2d at 840-43 (CSRA bars claims for defamation and infliction of emotional distress);

---

(enumerating categories of discrimination claims).  Where this exception applies, the district court may only "review the nondiscrimination claims in the manner of review by the Federal Circuit Court of Appeals, *i.e.*, on the administrative record." *Ugarte*, 40 F. Supp. 2d at 181 (collecting cases); *see also Stella*, 284 F.3d at 144.

*Broughton v. Courtney*, 861 F.2d 639, 644 (11th Cir. 1988) (CSRA bars state-law claims for malicious interference with employment and conspiracy to interfere with employment); *Schwartz v. Int'l Fed. of Prof. & Tech. Eng'rs*, 306 F. App'x 168, 173 (5th Cir. 2009) (CSRA bars intentional infliction of emotional distress claim); *Burl v. Principi*, 181 F. App'x 760, 762 (11th Cir. 2006) (CSRA bars invasion of privacy claim); *Loos v. Napolitano*, 665 F. Supp. 2d 1054, 1062-63 (D. Neb. 2009) (CSRA bars state-law contract claims); *Ugarte*, 40 F. Supp. 2d at 182 (CSRA bars defamation claim); *Kersey v. Widnall*, No. Civ. A-97-10464, 1998 WL 151232, at *5 (D. Mass. Mar. 12, 1998) (CSRA bars claims for defamation and invasion of privacy); *Berry v. United States*, 93 Civ. 8652, 1995 WL 33284, at *4 (S.D.N.Y. Jan. 27, 1995) (CSRA bars claims under Federal Tort Claims Act and under state law).

The thrust of Plaintiff's state-law tort claims is that defendants Spain and Haran violated "Plaintiff's and his family's right to privacy" and tarnished Plaintiff's reputation "by disclosing and/or disseminating personal information and baseless accusations with regard to Plaintiff's work performance to others within and outside of FERC to humiliate and/or influence Plaintiff's family." Complaint ¶ 67. Plaintiff claims that defendants Spain and Haran made the allegedly false accusations about Plaintiff's work performance and that they shared confidential information about Plaintiff's wife's upcoming surgery, which Plaintiff claims that he disclosed as part of scheduling dam site visits, both as a means to dissuade Plaintiff from pursuing his alleged "whistleblowing" complaints concerning the use of the sign-in sheets, and also to retaliate against him for raising those concerns. *See* Complaint ¶¶ 51, 52, 58, 59.

The alleged actions taken against Plaintiff, including those taken in the wake of defendant Spain's and Plaintiff's July 27, 2017 confrontation, as well as Plaintiff's ultimate termination, constitute "personnel action[s]" under the CSRA. *See* 5 U.S.C. 2302(a)(2)(A)(iii); *Roth*, 952

8

F.2d at 614 ("The corrective action category is a capacious one, encompassing a wide variety of conduct affecting federal employees."); *Jarvis v. Cardillo*, 98-CIV-5793 (RWS), 1999 WL 187205, at *11 (S.D.N.Y. Apr. 6, 1999) (holding that supervisor's alleged verbal abuse, intimidation, and threat of termination in retaliation for whistleblowing constituted "personnel action"). Plaintiff pleads that the allegedly defamatory remarks and purported disclosure of personal information concerned Plaintiff's work duties and performance, and were done in response to Plaintiff's alleged whistleblowing. *See* Complaint ¶ 67. Such allegations fall into the category of "prohibited personnel practice[s]." *See* 5 U.S.C. §§ 2302(b)(8), (9), (12). The CSRA governs, and therefore preempts, Plaintiff's state-law claims because, "no matter how generously [they] might be read, [they] allege[] a prohibited personnel practice, that is, a personnel action violative of the merit principles." *Roth*, 952 F.2d at 614; *see also Saul*, 928 F.2d at 841; *Doe*, 545 F. App'x at 8; *Jarvis*, 1999 WL 187205, at *11. Based on Plaintiff's purported whistleblowing, he could have sought relief from the OSC, and, upon termination of the OSC's inquiry, brought an individual right of action ("IRA") to the MSPB. *See Desmond v. Dep't of Defense*, No. 92-2201, 1993 WL 88196, at *3 (1st Cir. Mar. 19, 1993) (citing 5 U.S.C. §§ 1214(2)(B)(3), 1214(3)). However, "there is no basis under which [P]laintiff can pursue an independent action in this court against [his] federal supervisors and employer[] for defamation" and other state-law torts. *Ugarte*, 40 F. Supp. 2d at 182; *see also Saul*, 928 F.2d at 842.

That Plaintiff was a probationary employee, and thus lacks direct appeal rights to the MSPB from his termination,[5] does not give Plaintiff a right to pursue remedies outside of the

---

[5] *See* 5 U.S.C. § 4303(f)(2) (expressly excluding probationary employees from review under Chapter 43); 5 U.S.C. § 7511(a)(1) (expressly excluding probationary employees from review under Chapter 75). As discussed *supra*, however, Plaintiff could have sought relief from the OSC, and then brought an IRA to the MSPB.

CSRA.  In deciding which federal employees would be covered by the CSRA, Congress chose

not to preserve pre-CSRA rights for those employees not covered by the CSRA.  *See Fausto*, 484

U.S. at 448-51 (rejecting non-preference excepted service employee's theory that persons

excluded from CSRA retain their pre-CSRA remedies).  To have done so would place Plaintiff, a

probationary employee, in a better position than employees and undermine Congress's own

purpose in enacting the CSRA, namely to replace the "patchwork system" of protection for

federal employees "with an integrated scheme of administrative and judicial review, designed to

balance the legitimate interests of the various categories of federal employees with the needs of

sound and efficient administration."  *Id.* at 445.  Thus, "even where the CSRA provides no

guaranteed forum, preemption of . . . work-related tort claims is necessary to fulfill congressional

intent."  *Roth*, 952 F.2d at 615 (internal quotations and citations omitted) (holding state-law torts

were pre-empted despite lack of remedy).  *See also Saul*, 928 F.2d at 840 ("[T]he preclusive

effect of the CSRA sweeps beyond the contours of its remedies."); *Burl*, 181 F. App'x at 762 ("It

is irrelevant that the CSRA does not provide a remedy for [plaintiff's] claim."); *Loos*, 665 F.

Supp. 2d at 1062-63 (CSRA preempts state-law claims for probationary employee); *Kersey*, 1998

WL 151232, at *5 (CSRA preempts state-law claims for probationary employee).  Thus, this

Court lacks jurisdiction over Plaintiff's state-law tort claims, and they must be dismissed.[6]

---

[6] For the same reasons that the CSRA preempts state-law torts, the CSRA also preempts claims
brought under the Federal Tort Claims Act ("FTCA").  *See, e.g.*, *Grisham v. United States*, 103
F.3d 24, 27 (5th Cir. 1997); *Rivera v. United States*, 924 F.2d 948, 951-54 (9th Cir. 1991); *Berry*,
1995 WL 33284, at *4.  Even if the CSRA did not preempt FTCA claims (it does), this Court
would still lack jurisdiction to hear such claims, because, among other reasons, Plaintiff never
filed an administrative tort claim, *see* 28 U.S.C. § 2675(a), and the United States has not waived
sovereign immunity for the torts Plaintiff alleges, *see* 28 U.S.C. § 2680(h) (FTCA bars claims for
defamation); 28 U.S.C. § 1346(b) (requirement of state-law analogue); *Hurwitz v. United States*,
884 F.2d 684, 686-88 (2d Cir. 1989) (affirming dismissal for lack of jurisdiction under FTCA
because no common-law right to privacy under New York law).

### III.  PLAINTIFF'S CONSTITUTIONAL CLAIMS MUST BE DISMISSED

#### A.  Sovereign Immunity Bars Plaintiff's Constitutional Claims Against FERC

It is well-settled that the "shield of sovereign immunity protects not only the United

States but also its agencies and officers when the latter act in their official capacities." *Dotson v.*

*Griesa*, 398 F.3d 156, 177 (2d Cir. 2005) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).

"[T]he United States has not waived its sovereign immunity with respect to claims that its

employees have committed constitutional torts." *Castro v. United States*, 34 F.3d 106, 110 (2d

Cir. 1994).  Consequently, to the extent that Plaintiff alleges constitutional claims against FERC,

the Court should dismiss them as barred by sovereign immunity.

#### B.  Plaintiff's Section 1981 and 1983 Claims Fail Because Defendants Spain and Haran Were Acting Under Federal Law

Plaintiff's claims brought pursuant to 42 U.S.C. §§ 1981 and 1983, *see* Complaint ¶ 5,

must be dismissed because both sections apply only to state actors, not federal officers.  *Dotson*,

398 F.3d at 162.  Here, "it is undisputed that all complained-of actions by the named [individual]

defendants were conducted pursuant to their authority under federal, not state, law," *id.,* and thus

Plaintiff cannot satisfy the "under color of state law" requirement of those claims, *see id.*

#### C.  The CSRA Precludes Plaintiff from Maintaining a *Bivens* Damages Claim

Reading Plaintiff's claims liberally to "raise the strongest arguments that they suggest,"

*Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013), Plaintiff appears to bring constitutional

claims against defendants Spain and Haran under *Bivens v. Six Unknown Named Agents of*

*Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging a First Amendment violation based

on his purported whistleblowing.  Binding Second Circuit authority flatly forecloses Plaintiff's

claim.  The Second Circuit has expressly held that, even when the CSRA affords the federal

employee no effective remedy, "the remedial scheme established by the CSRA precludes federal

civil service employees from challenging adverse employment decisions through *Bivens* actions

for money damages." *Dotson*, 398 F.3d at 168, 169-76 (precluding *Bivens* remedy to non-

preference eligible exempt employee); *see also Jarvis*, 1999 WL 187205, at \*9 (CSRA precludes

purported whistleblower's First Amendment claims).  The Second Circuit's reasoning and

holding is in line with numerous other federal courts of appeals, which have consistently held

that the CSRA precludes a *Bivens* remedy, even when the statute prescribes no alternative

remedy.[7]

The Supreme Court's recent decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), only

further confirms the Second Circuit's conclusion in *Dotson*.  In *Abbasi*, the Supreme Court

forcefully reiterated that a *Bivens* remedy has been recognized by the Supreme Court in only

three contexts, and that expanding the *Bivens* remedy beyond these specific contexts "is now a

'disfavored' judicial activity."  137 S. Ct. at 1857 (citation omitted).  Under *Abbasi*, courts must

engage in a two-step analysis to determine whether a case may proceed under a *Bivens* theory.

First, a court must decide whether a claim "presents a new *Bivens* context."  *Id.* at 1859.  If so,

then a court should proceed to a "special factors" analysis and consider "who should decide

whether to provide for a damages remedy, Congress or the courts[.]"  *Id.* at 1857 (internal

---

[7] *See, e.g.*, *Semper v. Gomez*, 747 F.3d 229, 237 (3d Cir. 2014) ("At this time, it is undisputed that the CSRA precludes current or former federal employees from bringing a *Bivens* damages action for alleged constitutional violations arising out of the employment context."); *Saul*, 928 F.2d at 840 ("[T]he CSRA precludes even those *Bivens* claims for which the act prescribes no alternative remedy.  The CSRA's comprehensive remedial provisions convince us that there was no inadvertence by Congress in omitting a damages remedy against supervisors whose work-related actions allegedly violate a subordinate's constitutional rights."); *Lombardi v. SBA*, 889 F.2d 959, 961 (10th Cir. 1989) (holding *Bivens* claim precluded by the CSRA where "the violations complained of by [plaintiff] occurred only as a result of the employment relationship"); *Feit v. Ward*, 886 F.2d 848, 854-56 (7th Cir. 1989) (holding that the comprehensiveness of CSRA, together with Congress's authority regarding federal employment, constitute special factors precluding *Bivens* action in employment context).

quotation marks omitted).  Per the Supreme Court, "[t]he answer most often will be Congress." *Id.*  Thus, "a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* (internal quotation marks and citation omitted).

With respect to the first step, Plaintiff's claims arise in a new context.[8]  The Supreme Court has never extended *Bivens* to a First Amendment claim in any context.  *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012); *Bush v. Lucas*, 462 U.S. 367, 368 (1983) (refusing to extend *Bivens* to a First Amendment speech claim involving federal employment).

As to the second step, as the Second Circuit held in *Dotson*, special factors preclude extending a *Bivens* remedy here.  In so holding, the Second Circuit recognized that the Supreme Court has identified the "enactment and amendment of the CSRA to construct an 'elaborate remedial scheme' for dealing with federal employment issues . . .  as a special factor cautioning against recognition of an implied right of action for federal employment disputes."  *Dotson*, 398 F.3d at 166 (citing *Bush*, 462 U.S. at 388).  The Supreme Court in *Bush* explained that, whether to imply a remedy did not turn on "the merits of the particular remedy," but on "who should decide" what remedy, if any, should be provided.  *Bush*, 462 U.S. at 380.  The Court concluded that "Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service."  *Id.* at 389.

---

[8] In *Abbasi*, the Supreme Court recognized that it has approved three types of *Bivens* claims in the past, and characterized them with a high degree of specificity: (1) a Fourth Amendment "claim against FBI agents for handcuffing a man in his own home without a warrant," *Abbasi*, 137 S. Ct. at 1860; (2) a Fifth Amendment "claim against a Congressman for firing his female secretary" where Title VII was not an available remedy because the federal employee was not covered by Title VII, *id.*; and (3) an Eighth Amendment "claim against prison officials for failure to treat an inmate's asthma."  *Id.*

Because the CSRA did afford the employee in *Bush* other relief for his injuries, some courts initially concluded that preclusion of a *Bivens* claim depended on the statute providing the employee with meaningful remedies for his employment claim. *See Dotson*, 398 F.3d at 166 (citing cases). "This assumption was dispelled by the ruling in *Schweiker v. Chilicky*," *id.*, which "made clear that it is the overall comprehensiveness of the statutory scheme at issue, not the adequacy of the particular remedies afforded, that counsels judicial caution in implying *Bivens* actions," *id.* at 166-67 (citing *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). The Second Circuit found that the "unavailability of judicial review under the CSRA for certain employment grievances cannot be deemed 'inadvertent' in light of the Supreme Court's decision in *United States v. Fausto*." *Dotson*, 398 F.3d at 167. Considering *Bush*, *Schweiker*, and *Fausto*, the Second Circuit "expressly" held that "the remedial scheme established by the CSRA precludes federal civil service employees from challenging adverse employment decisions through *Bivens* actions for money damages." *Id.* at 168. The same result is mandated here.

Further, unlike the plaintiff in *Dotson*, Congress did provide Plaintiff with a remedy. He could have requested the OSC to investigate his claim of retaliation based on his alleged whistleblowing. *See supra; Feit*, 886 F.2d at 852 (describing remedy under CSRA for excepted service employee to challenge alleged First Amendment violation). Plaintiff cannot circumvent the methods prescribed by Congress for redressing his alleged wrongs, particularly because "allow[ing] a *Bivens* remedy would put [him] in a better position than employees . . ., an imbalance this Court [should] not create, particularly without congressional authorization." *Patrick v. Adjusters Int'l, Inc.*, 16-cv-2789 (WFK), 2017 WL 6521251, at *5 (E.D.N.Y. Dec. 18, 2017). Accordingly*,* the CSRA precludes Plaintiff's constitutional claims, and they must be dismissed.

14

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to dismiss this action in its entirety under Federal Rule of Civil Procedure 12(b)(1).

Dated: May 20, 2019
       New York, New York

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York

                         By:     */s/ Danielle J. Levine*
                                        DANIELLE J. LEVINE
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Tel.: (212) 637-2689
                                        E-mail: danielle.levine@usdoj.gov

15

***Chinniah v. FERC, et al.***
**No. 18-cv-8261 (VSB)**

## <u>CERTIFICATE OF SERVICE</u>

I, Danielle J. Levine, an Assistant United States Attorney for the Southern District of New York, hereby certify that on May 20, 2019, I caused a copy of the following:

1) Defendants' Notice of Motion to Dismiss the Complaint;
2) Memorandum of Law in Support thereof;
3) Declaration of Sidney Chapman, dated May 17, 2019;
4) Notice to Pro Se Litigant Pursuant to Local Civil Rule 12.1; and
5) Copies of all unpublished decisions, in accordance with Local Civil Rule 7.2,

to be served by e-mail and Federal Express overnight delivery, delivery charges pre-paid, upon the following:

> Gnana Chinniah
> 506 Erford Road
> Camp Hill, PA 17011
> chinniahg@hotmail.com

Dated: New York, New York
      May 20, 2019

                                */s/ Danielle J. Levine*
                                 DANIELLE J. LEVINE
                         Assistant United States Attorney