UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
              :
GNANA M. CHINNIAH,          :
              :
            Plaintiff,     :
              :          18-CV-8261 (VSB)
      - against -           :
              :          **OPINION & ORDER**
              :
FEDERAL ENERGY REGULATORY    :
COMMISSION, et al.,          :
              :
            Defendants. :
              :
-----------------------------------------------------------X

Appearances:

Gnana M. Chinniah
Camp Hill, PA
*Pro Se Plaintiff*

Geoffrey S. Berman
United States Attorney for the
Southern District of New York
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Pro se Plaintiff Gnana Chinniah filed an amended complaint ("Amended Complaint") against Defendants Federal Energy Regulatory Commission ("FERC"), John Spain, and Prapa Haran (collectively, "Defendants"). (Doc. 19.) The Amended Complaint asserts that the "action is brought pursuant to 42 U.S.C. §§1981 and 1983, as it is for discrimination, retaliation, due process, and other violations under color of law against the Plaintiff for engaging in activities protected by the First Amendment, and for conspiracies related thereto under Sections 1982, 1983, and 1985(3), Whistleblower Protection Act of 1989, 5 U.S.C. § 2302 . . . [and] claims

under New York state law." (*Id*. ¶ 5.)  Before me is Defendants' motion to dismiss the Amended Complaint.  (Doc. 24.)  Because I find that I do not have jurisdiction over certain of Plaintiff's claims and that Plaintiff fails to plausibly allege the other claims he asserts, Defendants' motion to dismiss is GRANTED.

## I.     **Factual Background**[1]

Plaintiff was hired by FERC as a Civil Engineer to work in its New York Regional Office ("FERC-NYRO") on January 23, 2017.  (Am. Compl. ¶ 6.)[2]  His direct supervisor at the time was Defendant Haran, a Branch Chief at FERC-NYRO.  (*Id*. ¶¶ 4, 6.)  Defendant Haran instructed his subordinates, including Plaintiff, "to sign in and sign out in his office on those days they report to" FERC-NYRO.  (*Id*. ¶ 9.)  Defendant Haran was aware or suspicious of some employees "cheating on the sign-in sheet," i.e. signing in for more hours than they actually worked; therefore, he asked Plaintiff to keep him informed of the time those employees actually signed in or out.  (*Id*. ¶ 11.)

On July 13, 2017, Plaintiff went to Haran's office and signed in.  (*Id*. ¶ 13.)  The time was around 7:35 am, and he noticed that his colleague Harold Kamara had already "signed in" at 8:30 am.  (*Id*.)  Concerned about the "legitimacy" of this time entry, Plaintiff took pictures of the sign-in sheet, the wall clock in Haran's office that showed the time to be 7:35 am, and Kamara's work area where the light was off and there was no laptop.  (*Id*. ¶¶ 14–15.)  Plaintiff also reported to Defendant Haran what he believe to be the "questionable/unethical signing in of [ ] Kamara who was not in the NYRO building on that day".  (*Id*. ¶ 22.)  However, Defendant Haran

---

[1] The facts contained in this section are based upon the factual allegations set forth in Plaintiff's Amended Complaint.  (Doc. 19.)  I assume the allegations in the Amended Complaint to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's Amended Complaint.  (Doc. 19).

did not demonstrate any interest in following up on this incident for almost two weeks. (*Id.* ¶ 23.)

On July 27, 2017, Plaintiff reported this incident to Defendant Spain, the Regional Engineer at FERC-NYRO. (*Id.* ¶¶ 3, 24.) Defendant Spain appeared defensive and downplayed this incident by saying that Kamara "may have come to NYRO to sign in that day and may have left the office to perform dam safety inspections." (*Id.* ¶ 25.) When Plaintiff disclosed that another staff member was also aware of "the serious unethical conduct" by Kamara, as well as by several other employees, Defendant Spain became "visibly angry" and "threat[ened] to terminate Plaintiff's probationary employment." (*Id.* ¶ 26.) Plaintiff repeated that he only wanted to schedule a meeting with Defendant Haran so that "the incident involving Mr. Kamara's dishonest signing in" could be investigated. (*Id.* ¶ 27.)

Later that day, Plaintiff followed up with an email to Defendant Spain concerning scheduling the meeting, copying Defendant Haran and a few senior staff members. (*Id.* ¶ 30.) A few minutes after Plaintiff sent his email, Defendant Spain "came rushing into the cubicle of Plaintiff, without asking for any permission, and whispered threats using derogatory language stating that Plaintiff was not even worth a half of what Mr. Kamara was doing for FERC." (*Id.*) When Plaintiff responded by asking Defendant Spain to "repeat what he whispered in 'plain English' and louder to be clear to everyone," (*id.* ¶ 31), Defendant Spain rushed back to his own office, (*id.* ¶ 32). Soon after, Defendant Spain directed his secretary to have Plaintiff removed from the building immediately by the Federal Protection Service. (*Id.* ¶ 35.) Plaintiff left the building voluntarily. (*Id.* ¶ 36.)

On July 31, 2017, Plaintiff, not feeling "fit to return to work" after the incident with Defendant Spain, wrote an email to Defendants Spain and Haran, requesting sick leave and to

reschedule the meeting to discuss the "ethical issues within NYRO." (*Id.* ¶ 39.) Defendant Spain, however, responded with an email saying that he placed Plaintiff on administrative leave with a recommendation to Human Resources of FERC to terminate Plaintiff's "probationary employment." (*Id.* ¶ 40.)

On August 1, 2017, Plaintiff reported this incident to Defendant Spain's direct supervisor, David Capka, "by forwarding the email from Spain to clarify his position and to request him to follow the due process to investigate into this incident to be fair to all involved indicating that Plaintiff would fully cooperate with the Human Resources of FERC." (*Id.* ¶ 41.) Capka "replied promptly saying that he was forwarding that email to FERC's HR." (*Id.* ¶ 42.) On August 11, 2017, Sidney Chapman, the Director of Human Relations of FERC, contacted Plaintiff, indicating that he was directed by Capka "to investigate into the incident and the alleged ethical issues within FERC-NYRO." (*Id.* ¶ 45.) Plaintiff spoke with Chapman on August 16, 2017, about the various incidents and the sequence of events. (*See id.* ¶¶ 47–49.)

At the time, Plaintiff's wife was about to have a "serious surgery," and Defendant Haran used another FERC employee to "leverage [that] pending serious surgery . . . as a bargaining tool" by suggesting that Plaintiff stop his complaint about the ethical issues to FERC's headquarters and "schedule the surgery and seek some anger management counseling help before Plaintiff's health benefits ended." (*Id.* ¶ 51.) In doing so, Defendant Haran "disclos[ed] a very confidential conversation" regarding Plaintiff's wife's surgery. (*Id.* ¶ 52.)

"After placing the Plaintiff on [a]dministrative leave pending the investigation by Mr. Chapman of HR for almost six weeks," Defendant Spain sent Plaintiff the "Notification of Termination of Probationary Employment" on September 11, 2017, with the last day of Plaintiff's employment being September 15, 2017. (*Id.* ¶ 53.) Defendant Spain stated that the

reasons for terminating Plaintiff's employment included his "failure to seek permission to be away from work after he was forced out of NYRO . . . and being not dependable to do the type work assignments [sic]." (*Id.* ¶ 54.) Plaintiff had been satisfactorily performing the work assignments during 2017, as reflected by his quarterly performance evaluation. (*Id.* ¶ 8.) Moreover, Plaintiff had been employed "for more than the 6 month probationary period when he was terminated." (*Id.* ¶ 64.)

Plaintiff now brings this lawsuit, alleging, among other things, that Defendants FERC, Spain, and Haran violated the Whistleblower Protection Act of 1989 ("WPA"), 5 U.S.C. § 2302, by retaliating against him after he complained about the "ongoing unethical violations" within FERC-NYRO. (*Id.* ¶ 72.) Plaintiff further alleges that Defendants violated his family's privacy by disclosing information about his wife, (*id.* ¶ 74), and his "Civil Rights and First Amendment Rights," (*id.* ¶ 76.)

Plaintiff mentions that he has not filed any complaint with the Office of Special Counsel ("OSC") or the Merit Systems Protection Board ("MSPB") because "he was dealing with a very stressful situation [] with his wife's health problems [and] believed that MSPB or OSC may not have jurisdiction over serious privacy violation and discrimination related charges." (*Id.* ¶ 69.)

## II.   Procedural History

Plaintiff filed his complaint on September 11, 2018. (Doc. 1.) Defendants appeared on March 11, 2019, (Doc. 6), and filed their motion to dismiss the complaint and supporting documents on May 20, 2019, (Doc. 13–15). On August 8, 2019, Plaintiff filed his Amended Complaint. (Doc. 19.) On September 6, 2019, Defendants filed their motion to dismiss Plaintiff's Amended Complaint and supporting documents. (Doc. 23–25.) On October 24, 2019, Plaintiff filed his opposition to Defendants' motion to dismiss. (Doc. 28.) On November 1,

2019, Defendants filed their reply to Plaintiff's opposition.  (Doc. 30.)

### III.     Legal Standards

#### A. *Rule 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(b)(1).  While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration, internal quotation marks, and citation omitted).

"A court must liberally construe a pro se litigant's papers when considering a motion to dismiss under Rule 12(b)(1)." *Jones v. Nat'l Commun. & Surveillance Networks*, 409 F. Supp. 2d 456, 465-66 (S.D.N.Y. 2006) (citing *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995)).  Regardless of this liberal construction, "jurisdictional requirements are not relaxed based on a litigant's pro se status." *Escoffier v. MFY Legal Servs.*, No. 13 CIV. 80898 LGS, 2015 WL 221048, at *1 (S.D.N.Y. Jan. 15, 2015) (citations omitted).  "Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking." *Chestnut v. Wells Fargo Bank, N.A.*, No. 11 Civ. 5369, 2012 WL 1657362, at *3 (E.D.N.Y. May 7, 2012) (citing

*Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000).

  **B. *Rule 12(b)(6)***

  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

  In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citation omitted). In a discrimination case, "[t]he facts required by *Iqbal* to be alleged in the complaint . . . need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

  Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed," *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89,

7

94 (2007)), and pro se pleadings should be read "to raise the strongest arguments that they suggest," *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).  *See also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that the submissions of *pro se* litigants are "held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)); *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (recognizing that pro se litigants should be accorded "special solicitude").  However, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citation omitted).

## IV. Discussion

### A. *The WPA Claim*

The Civil Service Reform Act of 1978 ("CSRA"), as amended by the WPA, "governs claims for retaliation against whistleblowing activities brought by federal employees against their federal employers." *Ghaly v. United States Dep't of Agric.*, 228 F. Supp. 2d 283, 288 (S.D.N.Y. 2002) (citing 5 U.S.C. § 2302(b)).  It is an "elaborate, comprehensive scheme" that "forbid[s] arbitrary action by supervisors and procedures . . . by which improper action may be redressed." *Bush v. Lucas*, 462 U.S. 367, 385 (1983).  Specifically, CSRA "sets up an exclusive mechanism through which civil servants can challenge prohibited retaliatory personnel practices." *Ghaly*, 228 F. Supp. 2d at 288.  To raise a claim under CSRA, an aggrieved employee must first file the claim with OSC, and then appeal, if at all, to MSPB.  *Id*. (citing 5 U.S.C. § 1214(a)(1)(A), (a)(3)).  Only after exhausting these administrative remedies may the employee seek judicial review by appealing the final MSPB decision; such appeal can only be raised before the Court of Appeals for the Federal Circuit.  *Id*. at 288–89 (citing 5 U.S.C. §

1214(c)(1)).

Here, Plaintiff admits that he never filed his claim before the OSC or MSPB. (Am. Compl. ¶ 69.) Plaintiff asks me to excuse his failure to exhaust administrative remedies by pointing to "equitable considerations," (MTD Opp. 5)[3], which seem to include the "very serious" nature of the "unethical and fraudulent misconduct" within FERC that he raised and his "private family health" issues, (*id.* at 4–5). However, "under CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite," *Ghaly*, 228 F. Supp. 2d at 288 (citing *Weaver v. United States Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996)); I am not at liberty to contemplate "equitable considerations" when I do not have jurisdiction.

Plaintiff also urges me to follow *Bonds v. Leavitt*, 629 F.3d 369, 378 (4th Cir. 2011), claiming that the Fourth Circuit in that case ruled that "the CSRA does provide for a direct right of action in federal district court." (MTD Opp. 2.) As an initial matter, *Bonds* is not binding precedent. In any event, Plaintiff misreads *Bonds*. *Bonds* involved a "mixed case," i.e. a case where the complaint alleged both discrimination claims and prohibited personnel practice claims like retaliation. *See Bonds,* 629 F.3d at 377; *see also* 29 C.F.R. § 1614.302(a)(1) (defining a "mixed case"). For such "mixed cases," the aggrieved employee can choose between first filing their claim with the agency or filing a "mixed case appeal" directly with MPSB. *Id.* at 378 (citation omitted). If they file with the agency first and the agency reaches a final decision, the employee can directly file a civil discrimination action in a federal district court. *Id.* The bottom line is that "even in a mixed case the plaintiff [raising CSRA claims] must exhaust administrative remedies." *Brundin v. United States*, No. 95 Civ. 2689 (WK), 1996 WL 22370, at *6 (S.D.N.Y.

---

[3] "MTD Opp." refers to Plaintiff's opposition to Defendants' motion to dismiss filed on October 24, 2019. (Doc. 28.)

Jan. 19, 1996). Therefore, *Bonds* does not support Plaintiff's first filing his case in federal court even if I accept his case as a "mixed case,"[4] and Plaintiff's WPA claim must be dismissed.

### B. *The Remaining Federal Claims*[5]

Plaintiff finally alleges violations of his "Civil Rights," including "discrimination through selective enforcement of FERC-NYRO's policies and procedures." (Am. Compl. ¶ 76.) Plaintiff seems to allege that the "selective enforcement of FERC-NYRO's policies" constitutes actionable discrimination under the Civil Rights Act. Title VII of the Civil Rights Act prohibits employment discrimination based on an individual's "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and Plaintiff does not allege discrimination against him under any of these categories, nor does he provide any factual allegations that can allow me to construe his claim as a Title VII discrimination claim. Therefore, the "Civil Rights" claim must be dismissed.

Plaintiff further alleges claims under 42 U.S.C. §§1981 and 1985. First, Plaintiff's claim under § 1981 cannot stand because § 1981 is concerned only with discrimination on the basis of race. *See Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 290 (S.D.N.Y. 2005) ("[Section] 1981 is concerned only with discrimination on the basis of race."). As mentioned, Plaintiff fails to allege any racial discrimination. Second, to plead a conspiracy claim under § 1985, a plaintiff

---

[4] Plaintiff's case is not a "mixed case." As will be explained below, Plaintiff's "discrimination" claim is based on the alleged "selective enforcement of FERC-NYRO's policies." (Am. Compl. ¶ 76.) He does not raise discrimination claims "based on race, color, religion, sex, national origin, age, disability, or genetic information," as is required for a "mixed case." 29 C.F.R. § 1614.302(a)(1). In other words, Plaintiff has merely labeled this claim as a discrimination claim, while his allegations in the Amended Complaint do not assert even a factually insufficient discrimination claim.

[5] The Amended Complaint lists the WPA claim as "Count One," "right to privacy and . . . willful damage [of] reputation" as "Count Two," and "Civil Rights and First Amendment Rights" claims as "Count Three." (Am. Compl. ¶¶ 71–76.) However, because Plaintiff also mentions 42 U.S.C. §§1981, 1983, and 1985 claims, (*id*. ¶ 5), I liberally construe the Amended Complaint as bringing these claims as well. *See Boykin*, 521 F.3d at 214 ("[D]ocument filed pro se is to be liberally construed." (citation omitted)).

10

"must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end[,]" along with "some details of time and place and the alleged effects of the conspiracy." *Benzinger v. NYSARC, Inc.*, 385 F. Supp. 3d 224, 236 (S.D.N.Y. 2019) (citing *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000). The Amended Complaint is simply devoid of any allegation suggesting that there was a "meeting of the minds" among the Defendants, not to mention any "details of time and place . . . of the conspiracy." *See id*. Therefore, the § 1981 and §1985 claims must be dismissed.

As to Plaintiff's First Amendment claim, it is well-established that federal agencies and officers in their official capacity are generally covered by sovereign immunity. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); *see also* 14 Charles Alan Wright, Arthur C. Miller & Edward H. Cooper, Federal Practice and Procedure § 3655, at 344 (3d ed. 1998) ("Suits against federal agencies and officers may be barred by the doctrine of sovereign immunity if the conduct in question has been undertaken on behalf of the government."). Although the Supreme Court recognized an implied cause of action for money damages against federal officers who violated a plaintiff's constitutional rights, *see generally Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), these actions are precluded where Congress has created an adequate statutory remedial scheme. In *Bush v. Lucas*, 462 U.S. 367, the Supreme Court held that CSRA provides an "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations," therefore precluding a *Bivens* action by a federal employee alleging First Amendment violations. *Id*. at 388; *see also Dotson v. Griesa*, 398 F.3d 156, 180 (2d Cir. 2005) (joining other circuits which ruled that the comprehensive nature of CSRA indicates that

11

Congress did not intend for federal employees to pursue supplemental judicial relief); *Williams v. Young*, 769 F. Supp. 2d 594, 599–600 (S.D.N.Y. 2011) ("The CSRA represents the paradigmatic example of a comprehensive remedial scheme which precludes courts from fashioning *Bivens* remedies for federal employees."); *Hightower v. United States*, 205 F. Supp. 2d 146, 155 (S.D.N.Y. 2002) ("Congress [by enacting CSRA] has demonstrated a clear intent to foreclose the award of money damages against federal employees for constitutional violations that occur within the course of federal employment."). Therefore, the First Amendment claim is precluded by CSRA and must also be dismissed.[6]

Finally, Plaintiff's § 1983 claim must also fail because "Section 1983 [only] provides a cause of action for the deprivation of constitutional rights committed by a person acting under color of state law," and an action under § 1983 "cannot lie against federal officers." *Spinale v. USDA*, 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009) (citations omitted). "Where a plaintiff brings a Section 1983 claim against federal defendants in error, the proper course of action is to construe the complaint as stating a cause of action under *Bivens*." *Id*. *Spinale* is inapplicable here because, as discussed *infra*, Plaintiff cannot bring a *Bivens* action when Congress has created CSRA as an adequate statutory remedial scheme.

Therefore, Plaintiff's remaining federal claims should also be dismissed.

### C. *The State Law Claims*

Plaintiff pleads what seems to be invasion of privacy and defamation claims under the state law. (Am. Compl. ¶ 74 (alleging "violation of . . . right to privacy and willful damage by tarnishing [Plaintiff and his family's] reputation by disclosing and/or disseminating personal

---

[6] I further note that "[s]everal courts have held that the *Bush* rationale applies equally to § 1985(1) claims by aggrieved federal employees who have comprehensive administrative remedies available." *Gregor v. Derwinski*, 911 F. Supp. 643, 651 (W.D.N.Y. 1996) (collecting cases from other Circuits). Because I have dismissed Plaintiff's § 1985 claim for obvious pleading defects, I do not address this issue here.

12

information and baseless accusation with regard to Plaintiff's work performance to others").) However, "actions complaining of torts arising out of federal employment are pre-empted by the CSRA," whether they are filed in state or federal courts. *Berry v. United States*, No. 93 CIV. 8652 (LLS), 1995 WL 33284, at *4 (S.D.N.Y. Jan. 27, 1995); *see also Rosado v. Potter*, No. 3:06cv127(AHN), 2007 WL 9753112, at *6 (D. Conn. Jan. 30, 2007) ("Courts have consistently held that the CSRA provides the exclusive procedure for challenging federal personnel decisions, and thus, adjudication of state law claims within the scope of the CSRA would create an obstacle to the attainment of Congress's goal of unifying challenges to federal personnel decisions in a single administrative forum." (citing *Petrini v. Howard*, 918 F.2d 1482, 1485 (10th Cir. 1990)); *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (finding that CSRA preempted the plaintiff's state law invasion of privacy claim); *Am. Postal Workers Union v. United States Postal Service*, 940 F.2d 704, 709 (D.C. Cir. 1991) ("The CSRA provides an exclusive framework for judicial review of adverse disciplinary actions taken by federal agencies." (collecting cases from other circuits).) Plaintiff's claims arise out of his federal employment and involve FERC's personnel decisions: the "violation of privacy" and "dissemination of personal information" were allegedly part of Plaintiff's supervisor's retaliation against him after he reported certain "ethical violations" within the office.[7] In other words, these state law tort claims fall within the scope of CSRA, and therefore are preempted and must be dismissed.[8]

---

[7] Plaintiff does not seem to object that his case arises out of his federal employment – indeed, that is why he also brings claims under WPA.

[8] Even if these state law claims are not preempted, I would decline to exercise supplemental jurisdiction over these claims under 28 U.S.C. § 1367(c)(3) because I have dismissed all of Plaintiff's federal claims. *See also Gonzalez v. City of N.Y.*, 442 F. Supp. 3d 665, 700 (S.D.N.Y. 2020) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims." (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (internal quotation marks omitted)).

## V. <u>**Conclusion**</u>

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is hereby GRANTED. The Clerk is respectfully directed to mail a copy of this Opinion & Order to the pro se Plaintiff and terminate the case.

SO ORDERED.

Dated: February 9, 2022
     New York, New York

                                                Vernon S. Broderick
                                                United States District Judge